## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
CUTLER ASSOCIATES, INC.,                                     )
                Plaintiff                                       )
                                            )
v.                                                                                  )          **CIVIL ACTION**
                                            )          **NO. 15-40021-TSH**
PALACE CONSTRUCTION, LLC,                           )
COLBY PALACE, LLC, and                                     )
OPTIMUM BUILDING SYSTEMS AND                )
MANAGEMENT,                                                        )
                Defendants.                                 )
_____)

## MEMORANDUM OF DECISION AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS (Docket No. 8) AND
## PLAINTIFFS' MOTION TO STAY AND COMPEL ARBITRATION (Docket No. 12)
### September 22, 2015

### Introduction

Plaintiff Cutler Associates, Inc. ("Plaintiff") asserts claims against Defendants Palace Construction, LLC, Colby Palace, LLC, and Optimum Building Systems and Management, Inc (collectively, "Defendants") for negligence, breach of contract, and indemnification.  The claims all arise out of allegedly defective exterior sheeting the Defendants installed during the construction of a building, the New Hall, for Mount Ida College ("Mount Ida").  Plaintiff filed this complaint in Worcester Superior Court July 3, 2014. The Defendants removed to this Court February 11, 2015. The Defendants moved to dismiss the complaint pursuant to Mass. R. Civ. P. 12(b)(5) and Mass. R. Civ. P. 4(j), for insufficient service of process, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim.  Plaintiff has moved to stay the case and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

This Order addresses Defendants' Motion to Dismiss (Docket No. 8) and Plaintiff's Motion to Stay and Compel Arbitration (Docket 'o. 12).  For the reasons set forth below, the Defendant's Motion to Dismiss is *denied* in part and *stayed* in part, and the Plaintiff's Motion to Stay and Compel Arbitration is *granted*.

**Standard of Review**

A.  Mass. R. Civ. P. 12(b)(5) Untimely Service of Process

When faced with a Rule 12(b)(5) challenge, the burden of proof to establish proper service rests on the plaintiff.  *Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc.*, 901 F. Supp. 2d 255, 267 (D.Mass. 2012) (citing *Saez Rivera v. Nissan Mfg. Co.*, 788 F.2d 819, 822 n. 2 (1st Cir. 1986)).  The federal court has broad discretion to either dismiss a complaint or simply to quash service of process.  *DiDonato v. Mosher*, 1996 Mass. App. Div. 135, 136 (Mass. App. 1996).  The dismissal of a complaint is an inappropriate exercise of this discretion when there exists a reasonable prospect that service may yet be obtained.  *Id.*  When reviewing a Fed. R. Civ. P. 12(b)(5) motion, the Court is permitted to look beyond the pleadings and may consider affidavits and other documents to determine whether process was properly served, however, any factual ambiguities are to be resolved squarely in the plaintiff's favor.  *Morse v. Commonwealth Exec. Office of Pub. Safety Dep't of State Police*, 2013 U.S. Dist. LEXIS 48938, 4 (D. Mass. 2013) (citing *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008)).

B.  Fed. R. Civ. P. 12(b)(6) Failure to State a Claim Upon Which Relief Can Be Granted

To overcome a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546

(2007).  The plausibility of a claim is evaluated in a two-step process.  *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013).  First, the court must separate the complaint's factual allegations, which must be accepted as true, from its conclusory legal allegations, which are not entitled to the presumption of truth.  *Id.* at 43; *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013).  Second, the court must accept the remaining factual allegations as true and decide if, drawing all reasonable inferences in the plaintiffs' favor, they are sufficient to show an entitlement to relief.  *Manning*, 725 F.3d at 43  The court draws on judicial experience and common sense in evaluating a complaint, but may not disregard factual allegations even if it seems that actual proof of any particular fact is improbable.  *Iqbal*, 556 U.S. at 667, 129 S. Ct. 1949; *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955.  A motion to dismiss must focus not on whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims.  *Mitchell v. Mass. Dep't of Corr.*, 190 F. Supp. 2d 204, 208 (D. Mass. 2002).

   C.   Plaintiff's Motion to Stay and Compel Arbitration

> The Federal Arbitration Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Furthermore,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

3

9 U.S.C. § 4. When deciding a motion to stay and compel arbitration, a court must determine whether, (i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration. *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008). Whether a claim falls within the reach of a particular arbitration clause is a question for the district court to determine initially as a matter of law. *Id.*; *see Aceyado Maldonado v. PPG Indus., Inc.*, 514 F.3d 614, 616 (1st Cir. 1975). Federal policy favors arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

## Facts

Plaintiff is a Massachusetts corporation with a principal place of business in Worcester, Mass. Pl. Compl. ¶ 2. Defendant Optimum Building Systems and Management, Inc. ("Optimum") is a New Hampshire corporation with a principal place of business in New Hampshire. *Id.* ¶ 6. Optimum's principal office has been listed as 12 Colby Road, Litchfield, New Hampshire since its incorporation (as Optimum Building Systems) in 1990. Pl. Mot. to Stay & Comp. Arb. Ex. G. Defendant Palace Construction, Inc., ("PCI") was a New Hampshire corporation with a principal place of business in New Hampshire. Pl. Mot. to Stay & Comp. Arb. Ex. G. Defendant Colby Palace, LLC ("Palace/Colby") was a limited liability company organized under the laws of New Hampshire, originally named Palace Construction, LLC. *See id.* Ex. A, C. Three changes in these entities occurred March 31, 2010: Palace Construction, LLC changed its name to Colby Palace, LLC; PCI was incorporated; and the newly-named

Colby Palace, LLC merged with PCI, with PCI surviving the merger.  *See id.* Ex. A, C, D, E.  On

January 1, 2014, PCI merged with Optimum, with Optimum surviving the merger.  Pl. Mot. to

Stay & Comp. Arb. Ex. G.  The principal office address for all three defendant entities has been

listed as 12 Colby Road, Litchfield, New Hampshire since their respective formations.  Rene

Theroux was listed as the registered agent and as a founding member of Palace/Colby, as

Secretary of PCI, and as incorporator, director, president, secretary, and treasurer of Optimum.

Sylvain Theroux has been listed as a member of Palace/Colby, president and secretary of PCI,

and vice president of Optimum.

On May 31, 2007, Cutler as design-builder entered into a contract with Mount Ida as

owner for construction of a residential project commonly referred to as the New Hall.  Pl.

Compl. ¶ 8.  On August 13, 2007, Cutler entered into a subcontract, which included

indemnification and arbitration provisions, with Palace/Colby as subcontractor, pursuant to

which Palace/Colby would perform the exterior sheathing or stucco work required of Cutler

under its design-builder contract.  Pl. Mot. to Stay & Comp. Arb. Ex. K.  On July 10, 2008,

following completion of construction, the City of Newton issued a Certificate of Occupancy for

the New Hall.  Def. Motion to Dismiss Ex. C ¶ 3.  On April 24, 2014, Mount Ida notified Cutler

of a claim regarding alleged defects in the New Hall's exterior sheathing and subsequent water

damage.  *Id.* ¶ 11. Mount Ida's notification also included a line stating that Mount Ida was

seeking damages "in an amount not less than $640,000.00."  *Id.* At some point in 2014, Cutler

approached Optimum to ask that Cutler and Optimum enter into a tolling agreement to discuss

Mount Ida's claims.  *Id. ¶* 10.  Optimum chose not to enter into the agreement following its own

investigation and after receiving reports from the manufacturer of the sheathing material used,

who had also inspected the New Hall premises involved in the claim.  *Id.* Cutler provided

Optimum with a copy of Mount Ida's demand letter in May 2014.  *Id.* ¶ 12.

This action was filed July 3, 2014 in the Massachusetts Superior Court for the County of

Worcester.  Def. Notice of Removal Ex. B p. 3.  The required service deadline was October 1,

2014.  *Id.* at 1.  The case was dismissed without prejudice for lack of service November 18,

2014.  *Id.* at 3.  Cutler filed a motion to vacate the judgment and extend the time for service

December 8, 2014.  *Id.*  The Superior Court granted Cutler's motion December 15, 2014, and

PCI and Optimum were served January 12, 2015.  *Id.*  Mount Ida served Plaintiff with a Demand

for Arbitration January 9, 2015.  Pl. Mot. to Stay & Comp. Arb. Ex. L.  Plaintiff informed

Defendants of this fact January 30, 2015.  *Id.* Ex. A.  Defendants removed to this court on the

basis of 28 U.S.C. § 1332 diversity jurisdiction February 11, 2015.  Docket no. 1.  Plaintiff

proposed adding Defendants to its arbitration with Mount Ida February 12, 2015.  Pl. Mot. to

Stay & Comp. Arb. Ex. B.  Defendants filed their Mass. R. Civ. P. 12(b)(5) and Fed. R. Civ. P.

12(b)(6) motions to dismiss February 27, 2015.  Docket no. 8.  Plaintiff filed its motion to stay

and compel arbitration March 13, 2015.  Docket no. 12.

### Subcontract Language

The subcontract provisions relevant to arbitration ("Arbitration Provisions") read as

follows:

> **15.1:** All claims and disputes between the parties on any matter relating to this Subcontract will be decided and determined as follows:
> **15.2:** If the claim or dispute cannot be settled at the project manager/project executive level, then upon written demand of either party, the chief executive officers of the Subcontractor and of Cutler shall meet alone at the construction site within 14 days of the demand for a minimum of uninterrupted good faith discussions of at least two hours.  The meeting shall be a condition precedent to mediation.
> **15.3:** If a meeting between the chief executive officers in 15.2 above, or within such additional time as the parties may agree on, the parties do not settle the

dispute, either party may, 14 days after the meeting or expiration of such
additional time, submit the dispute to the American Arbitration Association for
Mediation under its then-current Mediation Rules.  The Parties shall share all the
costs of the mediation, which unless the parties and the mediator cannot agree
otherwise, shall be held in the city or town where the project is located.
Mediation shall be a condition precedent to arbitration or court action.
**15.4:** If the parties are unable to settle the dispute in mediation, the claimant may,
30 days after the mediation has concluded, file a demand for arbitration of the
dispute with the American Arbitration Association.  Except for disputes of
80,000.00, all disputes between the parties on any matter relating to the
Subcontract shall be subject to Arbitration in accordance with the Rules of the
Association, and unless the parties otherwise agree, at the city or town of the
Project.  All disputes or claims in excess of $80,000 will be decided by arbitration
only if Cutler agrees. If Cutler does not agree, such matters shall be determined by
the Court, but with both parties waiving any right to trial by jury.

*See* Pl. Motion to Stay & Comp. Arb. Ex. K.

## Discussion

A.    Defendants' Motion to Dismiss

I. Fed. R. Civ. P. 12(b)(5) Insufficient Service of Process

Defendants argue that the Complaint as to Palace should be dismissed pursuant to Mass.

R. Civ. P. 12(b)(5) for insufficient  service, as Plaintiff failed to serve the summons and

complaint within ninety days of the filing of the complaint, as required by Mass.R.Civ.P.4(j).

They assert that this court must find whether or not there was good cause for Plaintiff's failure to

effect service within ninety days of filing the complaint, and that Plaintiff has failed to allege,

and is unable to allege, any facts that show such good cause.  Def. Mem. of Law in Support of

Their Mot. to Dismiss p. 6.  Plaintiff has stated any facts to this court that demonstrate good

cause for failure to serve process.  In the state court, Plaintiffs pled that it failed to serve

Defendants because of difficulty determining which entity may be liable because of mergers and

name changes involving Defendants.

The Defendants' motion insofar as it relates to insufficient service of process is denied. The state court's grant of extension of time to effect service is at this point effectively[1] an interlocutory order issued by this Court[2]. *See* 9 U.S.C. § 1450; *Lechoslaw v. Bank of Am., N.A.*, 575 F. Supp. 2d 286, 292 (D.Mass. 2008) (citing *Nisho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988)).  This Court sees no convincing reason to dissolve or modify the state court's order.

II. <u>Fed. R. Civ. P. 12(b)(6) Failure to State a Claim Upon Which Relief Can Be Granted</u>

Considering that the Court considers this dispute properly referable to arbitration, the Court will stay Defendants' motion to dismiss insofar as it relates to the sufficiency of Plaintiff's claims as pled, pending the outcome of arbitration proceedings.

B.      <u>Plaintiff's Motion to Stay and Compel Arbitration</u>

Plaintiff argues that staying and compelling arbitration is appropriate because there is a valid, enforceable arbitration agreement, the parties' dispute falls within the scope of the agreement, and Plaintiff has not waived its right to arbitration.  *See Combined Energies*, 514 F.3d at 171; *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001); Pl. Mot. to Stay & Comp. Arb. p. 6.

Defendants argue Plaintiff's motion should be denied because pre-conditions to arbitration have not been satisfied, this dispute does not fall within the scope of the arbitration agreement, and Plaintiff has waived its right to arbitration through litigation conduct.

---

[1] But not for all purposes.  *See Concordia Partners, LLC v. Pick*, 2015 U.S. App. LEXIS 10694 (1st Cir. 2015) (holding that state court orders in cases removed to federal courts are not subject to federal interlocutory appeals before the district court has dissolved or adopted them.)

[2] It is worth noting that, while the state court order has become "federalized," it has no greater binding effect on this Court than any order this Court may in fact issue itself.  *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 436, 94 S. Ct. 1113 (1974) ("[t]here is no basis for believing that § 1450 was designed to give injunctions or other orders *greater* effect after removal to federal court than they would have had if the case had remained in state court.")

I. <u>Referability of this Issue to Arbitration</u>

Defendants argue that Plaintiff has failed to comply with the explicit requirements of the Arbitration Provisions, which require on-site meetings and mediation before arbitration may be pursued, and so this dispute is not arbitrable.

The determination of whether parties complied with an arbitration clause's pre-conditions to arbitration, including a "good faith negotiation" requirement, is an issue presumptively for the arbitrator to decide.  *Dialysis Access Ctr.*, *LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 383 (1st Cir. 2011); *see Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002).  The burden of overcoming this presumption is on the party seeking to avoid arbitration, and Defendants have made no argument as to why this presumption is or should be overcome. Thus, the decision as to the effect of Plaintiff's alleged failure to comply with the preconditions of arbitration is one for the arbitrator.

II. <u>Scope of Arbitration Provisions</u>

Plaintiff argues that the dispute is within the scope of the arbitration agreement because the arbitration provisions cover "all claims between the parties on any matter relating to this Subcontract." Because the allegedly negligent performance of its obligations under the Subcontract is the basis of Mount Ida's claims against Plaintiff, it forms the basis of Defendant's alleged indemnification duty to Plaintiff.  Pl. Mot. to Stay & Comp. Arb. Ex. K ¶ 15.1.

Defendants argue that the dispute is not within the scope of the arbitration agreement because the arbitration provisions only covered disputes that occurred during construction, as indicated by the requirement that the first step in resolving disputes that cannot be resolved at the project manager/project executive level is a good-faith meeting between the chief executive officers of the subcontractor (originally Palace Construction, LLC) and Plaintiff at the

construction site. Defendants point out that, at this point, there exists no construction site: the New Hall has been complete since 2008 and is currently housing students.  Defendants contend that it would be ridiculous for the chief executive officer meeting to take place at the completed residence hall, and therefore the arbitration provisions' scope must be limited to disputes that arise during construction.

When determining whether the parties agreed to arbitrate a certain matter, "courts generally… should apply ordinary state-law principles that govern the formation of contracts. *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 7 (1st Cir. 2014) (quoting First *Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The federal policy in favor of arbitration requires, at a minimum, that ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.  *Grand Wireless*, 748 F.3d at 7; *see PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).  Where the language of an arbitration clause is broad and "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think that only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *Grand Wireless*, 748 F.3d at 8 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986)).  Determination of the relative merits of the parties' substantive interpretations of the agreement is, absent a specific exclusion, an issue for the arbitrator to decide.  *See Grand Wireless*, 748 F.3d at 8; *AT&T Techs.*; 475 U.S. at 650.

The issue of whether or not the arbitration provisions cover disputes that do not arise during construction is properly decided by the arbitrator.  Here, the arbitration provisions are broad, covering "all claims and disputes between the parties on any matter relating to this Subcontract."  The Plaintiff's claims of negligent performance and breach of contract are matters relating to the subcontract, no express provision excludes these particular grievances from

10

arbitration, and Defendant has not produced forceful evidence of a purpose to exclude the claims from arbitration.

      III. <u>Waiver of Arbitration Provisions</u>

      Textually under the FAA, a court is only permitted to stay a court action pending arbitration if "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3; *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13, 15 (1st Cir. 2005). A "default" has generally been viewed by courts as including a "waiver." *Marie*, 402 F.3d at 13.

      Defendants argue that Plaintiff's litigation conduct constitutes an implied waiver of its right to arbitrate. Specifically, they argue that Plaintiff's filing of the lawsuit, failing to effect service, and then moving to compel arbitration eight months after its filing constitutes a waiver of their arbitration right because of the delay and because compelling arbitration at this point would be prejudicial to Defendants. Defendants further argue that if their motion to dismiss is denied, they intend to file third-party complaints in this Court against other subcontractors who worked on the project, and that those complaints may be time-barred by the same statute of repose they believe applies to Plaintiff's claims. The barring of these third-party complaints would be, in their words, "absolute prejudice." Def. Opposition to Pl.'s Mot. to Stay & Compel Arb. p. 7.

      Generally, there is a presumption that the arbitrator should decide "allegations of waiver, delay, or a like defense to arbitrability. *Howsam*, 537 U.S. at 84 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). However, whether or not a party has waived its right to arbitrate by litigation conduct is a question for the court, not the arbitrator. *See Marie*, 402 F.3d at 13, 15. This Court's determination of whether or not a conduct waiver occurred is informed by

11

a salmagundi of factors, including: the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced.

*Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 948 (1st Cir. 2014).  Another factor is "whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated…"  *Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc. Capital Accumulation Plan Litig.)*, 376 F.3d 23, 26 (1st Cir. 2004).  The party advocating waiver has the burden of demonstrating prejudice. *Joca-Roca Real Estate, LLC*, 772 F.3d at 945 (citing *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 19 (1st Cir. 1986)).  The prejudice showing required is "tame at best." *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 14 (1st Cir. 2003) (citing *Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995)).

Under these circumstances, the Defendants will not be prejudiced by the compulsion of arbitration.  Minimal litigation conduct has occurred, and the situation here is patently different from scenarios where delay in moving for compulsion of arbitration has resulted in parties engaging in months or years of unnecessary discovery or litigation conduct.  *See Joca-Roca Real Estate, LLC*, 772 F.3d at 945; *Rankin*, 336 F.3d at 10; *Menorah*, 72 F.3d at 222; *Jones Motor Co.*, 671 F.2d at 44.  Additionally, any claims Defendants seek to pursue against other subcontractors, whether in this Court or before an arbitrator, may be subject to statutes of repose regardless of the ruling on this motion.  Compulsion of arbitration does not contribute to any prejudice Defendants may experience in this regard.  Accordingly, Plaintiff has not waived its arbitration right by litigation conduct.  In light of the findings above, Plaintiff's motion to stay and compel arbitration is granted.

12

**Conclusion**

Defendants Palace Construction, LLC, Colby Palace, LLC, and Optimum Building Systems and Management's Motion to Dismiss Plaintiff's Complaint Pursuant to Mass. R. Civ. P. 12(B)(5), 4J and F.R.C.P. 12(B)(6) (Docket No. 8) is *denied* in part and *stayed* in part. Defendant has not demonstrated adequate justification for this Court to overturn the state court's ruling as to service.  Defendant's motion to dismiss is stayed pending the outcome of arbitration proceedings.

Plaintiff Cutler Associates, Inc.'s Motion to Stay and Compel Arbitration (Docket. No. 12) is *granted*.  The parties are accordingly ordered to arbitrate the underlying dispute.


SO ORDERED.


/s/ *Timothy S. Hillman*_____
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**